**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DUANE RICE, as personal representative
of the Estate of Bonny Rice,                                   Case No. 18-13517

       Plaintiff,                                              Honorable Nancy G. Edmunds

v.

MUSIC ROYALTY CONSULTING, INC.,
and LAURA BUTLER a/k/a Laura Rice,

       Defendants.
_____/

**ORDER AND OPINION GRANTING**
**DEFENDANT'S MOTION TO DISMISS [19]**

Pending before the Court is Defendant Music Royalty Consulting, Inc.'s motion to dismiss. (ECF No. 19.)  Defendant seeks dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff opposes the motion and alternatively requests leave to amend his complaint.  On March 13, 2019, the Court held a hearing in connection with the motion.  On March 29, 2019, the parties submitted supplemental briefing as ordered by the Court.  For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.  In addition, Plaintiff's remaining claims against Laura Rice are **DISMISSED** for lack of subject matter jurisdiction.  Plaintiff's request for leave to file an amended complaint is **DENIED**.

I.      **Background**

Bonny Rice ("Bonny") was a singer and songwriter best known for writing the hit song "Mustang Sally."  Throughout his lifetime, Bonny held copyrights in number of musical compositions.  On June 27, 2016, Bonny passed away.  Before he died, Bonny

1

sold and assigned his copyright interests in several musical compositions to Defendant Music Royalty Consulting, Inc. ("MRCI").

According to Plaintiff, MRCI is in the business of purchasing artists' interests in their musical works. In a typical transaction, MRCI pays a one-time lump sum fee in exchange for all of an artist's rights to his or her copyrights and the right to receive all future income streams associated with the works. MRCI is alleged to have a "history of taking advantage of elderly, vulnerable, and infirm artists by purchasing interests in their works for less than fair value." In this lawsuit, Plaintiff Duane Rice, Bonny's son, as personal representative of Bonny's estate, challenges the validity of the sale and assignment of Bonny's copyright interests to MRCI.

## A. The transaction

On November 6, 2012, Bonny and MRCI executed a term sheet outlining the terms of a proposed sale and assignment of Bonny's rights and interests in certain of his musical compositions to MRCI for a lump sum payment of $375,000.00. On November 29, 2012, Bonny executed an Irrevocable Royalty Purchase Agreement[1] through which Bonny agreed to sell and assign to MRCI seventy-five percent of his royalty rights in the compositions comprising Broadcast Music, Inc. Account No. 000286470. Under the terms of the agreement, MRCI would receive one-hundred percent of royalty payments relating to Bonny's compositions, but would pay Bonny his twenty-five percent share of those payments. The Purchase Agreement provided that any claims Bonny had against MRCI must be brought within "one year from the accrual of claim." Bonny's wife,

---

[1] The Purchase Agreement and Assignment reference and incorporate one another. The Purchase Agreement and Assignment and the related closing documents discussed herein, including the Release, Confirmation of Consideration, and subsequent Amendment as described herein, will be referred to together as the "Purchase Agreement."

Defendant Laura Butler Rice, witnessed Bonny's execution of the Purchase Agreement and represented to MRCI that Bonny was "in a healthy state of mind." Both the Term Sheet and Purchase Agreement provide that Bonny received, or waived the right to receive, advice from counsel in connection with his execution of the agreement.

According to Defendant MRCI, on December 5, 2012, MRCI paid Bonny a lump sum of $375,000.00. On that same date, Bonny executed a "Songwriter Confirmation of Final MRCI Transaction and Release of MRCI", through which Bonny purportedly released all claims against MRCI, and a Confirmation of Consideration in which Bonny acknowledged receiving payment from MRCI.

Following closing, MRCI received one-hundred percent of Bonny's royalty distributions and paid to Bonny twenty-five percent of each royalty distribution relating to the compositions in accordance with the Purchase Agreement. According to MRCI, in June of 2013 Bonny expressed interest in selling to MRCI his remaining twenty-five percent interest in the compositions. On June 27, 2013, MRCI and Bonny entered into an agreement entitled "Songwriter Amendment to Irrevocable Royalty Purchase Agreement Dated 11/20/2012, Confirmation of Final MRCI Transaction, and Release of MRCI". Under the Amendment, Bonny agreed to sell and assign to MRCI his remaining twenty-five percent interest in the compositions. In exchange, MRCI paid Bonny an additional $125,000.00.

Collectively, the contract documents purport to assign Bonny's right, title, and interest to all of his compositions, copyrights, and all other rights to derive future income from his compositions. The documents also direct Broadcast Music, Inc., the performing rights organization that collects public performance licensing fees and royalties for Bonny's

music, to pay all royalties derived from Bonny's works to MRCI instead of Bonny. And the documents direct music publishers, record labels, licensees, and all payors of music royalties for Bonny's compositions to pay all royalties to MRCI instead of Bonny.

## B. This lawsuit and Bonny's mental capacity

Plaintiff claims Bonny lacked the mental capacity to execute the Purchase Agreement and assign his interests in the compositions. According to the complaint, on August 7, 2012, Bonny was diagnosed with Alzheimer's disease. Plaintiff alleges that Bonny had a long history with dementia even before being diagnosed with Alzheimer's disease. Plaintiff states that due to the onset of Alzheimer's disease, Bonny's cognitive abilities became significantly impaired.

Plaintiff claims Bonny's illness and mental condition forced him to rely heavily on his wife, Defendant Laura Butler Rice, for assistance with basic tasks. Laura Rice and Bonny married in November 2011. For several years prior to their marriage, Laura Rice managed Bonny's career and was allegedly compensated for her role as Bonny's manager.

Plaintiff alleges that Bonny was not involved in the MRCI transaction. Plaintiff claims that at the time of the transaction, "Bonny lacked sufficient mental ability and capacity to understand in a reasonable manner the nature and effect of the documents that he signed and the transaction that purportedly took place." According to Plaintiff, Laura Rice negotiated with MRCI to sell Bonny's interests in the compositions and handled all aspects of the negotiation and sale. Plaintiff alleges that Laura Rice improperly usurped the proceeds received from MRCI for her personal benefit and to the detriment Bonny and his estate. However, Plaintiff does not allege that MRCI was aware

of Bonny's mental state at the time of the transaction.  Plaintiff also does not specifically allege that either of the Defendants engaged in fraudulent conduct.

According to Plaintiff, on June 27, 2016, Bonny passed away due to complications with Alzheimer's disease.[2]  Plaintiff alleges that on May 10, 2018 he was appointed as the personal representative of Bonny's estate.  However, according to public court records submitted by Defendant with its supplemental briefing, Plaintiff became the personal representative of Bonny's estate on September 19, 2016.

On November 12, 2018, Plaintiff initiated this action as representative of Bonny's estate against MRCI and Laura Rice.  Plaintiff challenges the validity of the sale and assignment, claims that Bonny's estate still owns the copyrights at issue, and contends that MRCI's receipt of royalties as a result of the transaction infringes the estate's interests in the compositions.  Plaintiff alleges that Bonny lacked the mental capacity to consummate the transaction with MRCI and claims that the amount paid by MRCI to Bonny was far less than the fair value of the rights Bonny transferred to MRCI in the sale. In the complaint, Plaintiff asserts claims on behalf of Bonny's estate for declaratory relief (Counts I and II), copyright infringement (Count III), unjust enrichment (Count IV), conversion (Count V), civil conspiracy (Count VI), tortious interference with business relationship or expectancy (Count VII), and breach of fiduciary duty (Count VIII).

On December 13, 2018, the Court entered an order declining to exercise supplemental jurisdiction over Plaintiff's state law claims and dismissing those claims

---

[2] In its supplemental briefing, Defendant contests Plaintiff's allegations indicating Bonny's death was related to his Alzheimer's disease, and submits a photocopy of a death certificate stating that Bonny's death was caused by cerebrovascular disease.  Setting aside the question of whether there is a relationship between Alzheimer's disease and cerebrovascular disease, the Court must accept Plaintiff's allegations concerning the cause of Bonny's death as true for the purposes of Defendant's motion.

without prejudice. (*See* ECF No. 8.) The Court subsequently reinstated those claims. (*See* ECF No. 13.) On January 31, 2019, Defendant MRCI moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant asserts two primary reasons for the Court to dismiss the complaint. First, Defendant argues Plaintiff's claims should be dismissed because Plaintiff failed to tender back the amounts paid by MRCI to Bonny prior to filing suit. Second, Defendant argues Plaintiff's claims are barred by the statute of limitations, either as proscribed by the Purchase Agreement or by law. Plaintiff opposes the motion and alternatively requests leave to amend his complaint.

## II.    Standard of Review

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir.2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir.2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to "state a claim to relief that is plausible on its
> face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct.
> 1955, 167 L.Ed.2d 929 (2007) ]. A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged. Id. at 556.
> The plausibility standard is not akin to a "probability requirement," but it asks
> for more than a sheer possibility that a defendant has acted unlawfully. Ibid.
> Where a complaint pleads facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line between possibility and
> plausibility of 'entitlement to relief.' " *Id.,* at 557 (brackets omitted).

*Id.* at 678. A plaintiff's factual allegations, while "assumed to be true, must do more than

create speculation or suspicion of a legally cognizable cause of action; they must show

entitlement to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Thus, "[t]o

state a valid claim, a complaint must contain either direct or inferential allegations

respecting all the material elements to sustain recovery under some viable legal theory."

*Bredesen*, 500 F.3d at 527.

In addition, if a court considers matters outside of the pleadings, the court must

convert the motion into one for summary judgment under Rule 56. *Turner v. Corr. Med.

Servs., Inc.*, No. 13-11783, 2014 WL 861579, at *2 (E.D. Mich. Mar. 5, 2014). However,

"[w]hen a court is presented with a 12(b)(6) motion, it may consider the Complaint and

any exhibits attached thereto, public records, items appearing in the record of the case

and exhibits attached to defendant's motion to dismiss so long as they are referred to in

the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll.

Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But "a court may only take judicial

notice of a public record whose existence or contents prove facts whose accuracy cannot

reasonably be questioned." *Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005).

## III.    Analysis

### A. The tender-back rule

Defendant argues Plaintiff's claims should be dismissed because Plaintiff failed to tender back the $500,000 allegedly paid by Defendant to Bonny.  Defendant contends tendering back this amount is a pre-requisite to Plaintiff's suit and Plaintiff's failure to do so requires dismissal of the complaint.  In response, Plaintiff argues the tender back rule should not apply because: (1) the tender-back rule only applies to voidable contracts and the contract at issue here is void, not voidable, because Bonny lacked capacity to enter the contract; and (2) even if the tender-back rule applies, it would be inequitable to strictly apply the rule under the facts and circumstances presented here.  Plaintiff also challenges Defendant's assertion that $500,000 was actually paid to Bonny.

The parties generally agree that a party must tender back the consideration received under an agreement prior to seeking its rescission. *See R.E. Daily & Co. v. John Madden Co., Ltd.*, 1 F.3d 1242, 9 (6th Cir. 1993).  They dispute whether the contract is void or voidable such that the tender-back rule would apply in this case, and whether that distinction even matters.  But neither party identifies any controlling authority on the issue.

Notwithstanding, and without determining whether this contract is void or voidable, the Court is not inclined to dismiss Plaintiff's complaint at this stage on the sole basis that he failed to tender back the alleged $500,000 payment prior to filing suit.  Plaintiff contests whether the full $500,000 amount was paid to Bonny, and Defendant has not conclusively established that such amounts were actually paid.  Moreover, Plaintiff admits Defendant

will be entitled to an offset of the amounts previously paid to Bonny in the event Plaintiff prevails. Whether Plaintiff pays now, or pays later, Defendant will be restored back to the position it was in prior to the transaction in the event it is unsuccessful in this dispute. Under principles of equity and considering the facts and circumstances presented here, the Court will not deny Plaintiff his day in court simply because the estate lacks sufficient resources to make the tender-back payment at this time.

## B. Statute of limitations

## 1. Contractual limitations

In the Purchase Agreement, Bonny agreed that he must bring any potential claim against MRCI within "one year from the accrual of such a claim." If this provision applies, then all of Plaintiff's claims accruing prior to November 8, 2017 would be barred by the agreed limitations period. Defendant argues that all of Plaintiff's claims accrued on November 29, 2012—the date Bonny executed the Purchase Agreement transferring his rights to MRCI. According to Defendant, all of Plaintiff's claims arise out of the validity of the transaction and MRCI's assertion of ownership of Bonny's copyrights as a result his execution of the Purchase Agreement. Thus Defendant maintains that all of Plaintiff's claims should be dismissed as time barred under the terms of the Purchase Agreement.

Plaintiff counters that the contractual limitations provision does not apply because the contract is void due to Bonny's lack of capacity to enter the contract. In other words, because Bonny lacked capacity to enter the contract, he also lacked capacity to agree to limit the statute of limitations.

Neither party presents any authority directly addressing this issue. However, if the purchase agreement is found to be void as a result of Bonny's lack of capacity, then the

provisions of the contract are necessarily void. If it turns out that Plaintiff is unable to establish that Bonny lacked capacity to enter the purchase agreement such that the agreement is void or voidable, then the contractual limitations provision may apply. But at the motion to dismiss stage, the Court must consider the allegations in the complaint as true. Accordingly, because Plaintiff alleges that Bonny lacked capacity to agree to the contractual limitations provision, the Court must deny Defendant's motion to dismiss on this basis.

This same reasoning applies to Defendant's argument that the contractual release bars Plaintiff's claims. The Purchase Agreement includes a broad release of liability through which Bonny purportedly released all of his claims against MRCI. However, whether this provision is valid and enforceable turns on the quasi-factual resolution of whether Bonny possessed sufficient mental capacity to enter into the agreement in the first place.

## 2. Declaratory relief

Plaintiff's claims for declaratory relief are subject to the same statute of limitations as Plaintiff's substantive claims for relief. *Taxpayers Allied for Constitutional Taxation v. Wayne County*, 537 N.W.2d 596, 601 (Mich. 1995). For the reasons discussed below, Plaintiff's substantive claims are time barred. Therefore Plaintiff's claims for declaratory relief are time barred.

## 3. Copyright claim

Whether Plaintiff's copyright claim is barred by the statute of limitations turns primarily on whether the claim is properly characterized as a claim for copyright infringement or ownership. Under the Copyright Act, a claim for copyright infringement

or ownership has a three-year statute of limitations. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007) (citing 17 U.S.C. § 507(b)).  But claims for infringement and ownership are subject to different accrual standards. *See Gomba Music Inc. v. Avant*, 225 F. Supp. 3d 627, 640 (E.D. Mich. 2016).  A claim for copyright ownership is barred three years from the plain and express repudiation or contestation of ownership. *Roger Miller Music, Inc.*, 477 F.3d at 390; *Consumer Health Info. Corp. v. Amylin Pharm., Inc.*, 819 F.3d 992, 997 (7th Cir. 2016).  A copyright ownership claim "accrues only once, and if an action is not brought within three years of accrual, it is forever barred." *Roger Miller Music, Inc.*, 477 F.3d at 390 (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996)).

In contrast, a copyright infringement claim "accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge." *Id.*  And "[b]ecause each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the statutory period." *Id.*  This is sometimes referred to as the separate accrual rule because each alleged act of infringement "gives rise to a discrete claim that accrues at the time the wrong occurs." *See Consumer Health*, 819 F.3d at 997.[3]

In the complaint, Plaintiff describes his copyright claim as one for infringement. Plaintiff states that because the sale to MRCI is void, the only issue in this case is Defendant's unauthorized "continued use and derivation of income from the Compositions

---

[3] Under these standards, accrual of both ownership and infringement claims turn on notice of the potential claim.  Both standards, in their own way, apply the discovery rule under which a claim accrues when the claimant knows or should have known of its claim. *See Consumer Health*, 819 F.3d at 997; *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 305 F. Supp. 3d 788, 791 (N.D. Ohio 2018).  The key difference, however, is that ownership claims accrue only once, while infringement claims are subject to the separate accrual rule. *See Roger Miller Music, Inc.*, 477 F.3d at 390.

and copyrights."  The specific conduct which Plaintiff contends constitutes copyright infringement is Defendant's receipt of the royalties associated with Bonny's copyright interests.[4]  According to Plaintiff, Defendant infringed Bonny's and the estate's rights each time it received royalty payments, which means that the separate accrual rule applies, and Plaintiff's claims for copyright infringement occurring in the three years prior to the filing of the complaint are timely.

In moving to dismiss this action, Defendant contends this is really an ownership dispute.  Defendant argues that the crux of Plaintiff's claim is the validity of Defendant's transaction with Bonny, and whether Defendant acquired Bonny's interests in the compositions as of November 29, 2012.  Therefore, according to Defendant, Plaintiff's copyright claim accrued on November 29, 2012 when Defendant first claimed ownership and Plaintiff's deadline to bring suit has long since passed.  The Court agrees with Defendant.

"[W]hen the gravamen of a copyright suit is a question of copyright ownership, the claim accrues when the ownership dispute becomes explicit—that is, when the claimant has notice that his claim of ownership is repudiated or contested.  *Consumer Health,* 819 F.3d at 997; *see Ritchie v. Williams*, 395 F.3d 283, 288 n. 5 (6th Cir.2005); *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011); *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1255 (9th Cir. 2013).  Where the plaintiff's copyright ownership is not conceded, copyright ownership—not infringement—is the gravamen of the claim.

---

[4] In the complaint, Plaintiff generally alleges that MRCI's infringing conduct includes the "unauthorized use, reproduction, licensing, distribution, transmission, and or exploitation of the Compositions and copyrights." But the only factual allegations describing potentially infringing conduct involve Defendant's receipt of royalties associated with the copyrights.  There are no factual allegations in the complaint suggesting that Defendant has otherwise used or reproduced copyrighted material in a way that would violate Plaintiff's purported rights.

*See Kwan*, 634 F.3d at 230.  As one district court has described, in copyright ownership cases, the lawsuit is between two parties who claim ownership of the copyrights, and one party's claim of infringement is entirely a function of whether the other party is the sole owner of the disputed copyrights.  *See Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 542-43 (S.D.N.Y. 2015).  For example, in *Ritchie*, the defendant's copyright-based claims were untimely because the plaintiff, Robert Ritchie, also known as Kid Rock, expressly told the defendants in a letter that he had exclusive ownership of the songs he had written several years before the lawsuit was filed. 395 F.3d at 288.  The Sixth Circuit concluded that the district court improperly applied the separate accrual rule applicable to copyright infringement claims, and held that Kid Rock's letter constituted a plain and express repudiation of defendant's copyright ownership claim that started the three-year-statute-of-limitations period. *Id.*

In his complaint, Plaintiff alleges that in November of 2012, Bonny entered into a contract with MRCI in which he assigned his right (including copyrights), title and interest in and to his compositions to MRCI.  Plaintiff asserts that "the estate is the rightful owner of Bonny's Compositions and any copyrights and reversion rights related thereto."  Although Plaintiff attempts to frame his claim as one for infringement, his entire case depends on the validity of the MRCI transaction.  Each alleged instance of infringement turns on whether Bonny had capacity to assign his copyrights to MRCI.

Because Plaintiff's copyright claim is really one for copyright ownership, the claim accrued when ownership was expressly repudiated or contested, which in this case was November 29, 2012 when Bonny signed the Purchase Agreement conveying to MRCI his rights in the compositions.  Even assuming Bonny lacked capacity to enter into the

contract, nothing in the complaint establishes that Bonny, his representatives, his estate, Plaintiff, or any of Bonny's other family members or heirs did not have reason to know that MRCI claimed ownership of Bonny's compositions. Plaintiff therefore had three years from the date of the Purchase Agreement to bring his claim for copyright infringement. Plaintiff filed his complaint on November 12, 2018—almost three years after expiration of the Copyright Act's three-year statute of limitations. Under the straightforward application of the statute of limitations, Count III of the complaint is time-barred. In Part C below, the Court will address whether federal tolling principles should apply to excuse Plaintiff's otherwise untimely copyright claim.

### 4. Unjust enrichment claim

Both parties agree that unjust enrichment is an equitable doctrine. Both parties agree that when an equitable claim provides relief that is analogous to the relief available under a similar legal claim, courts typically apply the legal claim's statute of limitations to the equitable claim. *See Lothian v. Detroit*, 414 Mich. 160, 168-169; 324 N.W.2d 9 (1982) (cited by both parties).[5] Both parties also agree that Plaintiff's unjust enrichment claim should be governed by a three-year statute of limitations, though for different reasons.

Defendant argues Plaintiff's unjust enrichment and conversion claims are similar, and therefore the three-year statute of limitations applicable to conversion claims applies. Defendant points out that the crux of Plaintiff's Complaint is that MRCI allegedly improperly took or converted Bonny's rights in his compositions by having Bonny sell and assign his rights pursuant to the Purchase Agreement. Plaintiff responds that his unjust enrichment claim should be governed by the statute of limitations applicable to his

---

[5] Although the Purchase Agreement provides that California law will govern the parties' relationship, both parties rely on Michigan law without explanation in their briefing.

copyright claim, not his conversion claim, because both claims seek recoupment of the monies Defendant has earned from Bonny's copyrights. Either way, Plaintiff's claim accrued on November 29, 2012 and a three year statute of limitations applies. Plaintiff's unjust enrichment claim is therefore barred regardless of whether the Court analogizes it to his conversion or copyright claim.

### 5. Conversion claim

Plaintiff asserts both a common law conversion claim and a statutory conversion claim. In Michigan, common law and statutory conversion claims accrue when "the defendant wrongfully exercises dominion or control over the property, not when a plaintiff demands its return." *Bain v. Baker's Choice Co.*, 2001 WL 826104 at *8 (Mich. Ct. App. Jul. 20, 2001). Such claims are subject to a three year statute of limitations. *See* MCL § 600.5805(10); *Tillman v. Great Lakes Truck Center, Inc.*, 277 Mich. App. 47; 742 N.W.2d 622, 623-24 (Mich. Ct. App. 2007); *Brilinski v. Merit Energy Co.*, LLC, 2015 WL 418091 at *3 (E.D. Mich. Jan. 30, 2015).

Plaintiff argues that his conversion claim is not time barred because the claim focuses on Defendant's alleged misappropriation of royalties and other income generated by the compositions, as opposed to the misappropriation of the copyrights themselves. However, in the complaint, Plaintiff states that ""MRC has wrongfully exerted dominion and control over Bonny and the Estate's personal and intellectual property…by exercising control over the Compositions, by deriving royalties and other income from the Compositions, and by retaining royalties and other income generated by the Compositions." The Court finds that Plaintiff's conversion claim accrued on November 29, 2012, when Bonny sold and assigned to MRCI his rights to the compositions. Since

that date MRCI has exercised its rights as the purported owner of the compositions. Accordingly, Plaintiff's conversion claim is barred by the statute of limitations.

### 6. Civil conspiracy claim

In Michigan, a civil conspiracy claim takes on the limitations period of the underlying wrong that was the object of the conspiracy. *Thompson v. Haviland*, 2008 WL 2478321, at *2 (E.D. Mich. Jun. 17, 2008) (internal quotations omitted). The underlying wrong alleged by Plaintiff in this case is conversion. For the reasons discussed above, Plaintiff's claim for civil conspiracy is barred by Michigan's three-year statute of limitations for conversion actions.

### 7. Tortious interference claim

In Michigan, the statute of limitations for a claim of tortious interference is three years. *Blazer Foods, Inc. v. Restaurant Properties, Inc.*, 259 Mich. App. 241; 673 N.W.2d 805, 813 (1993). A claim for tortious interference accrues once all of the elements of the claim are present. *Corporate Auto Resource Specialists v. Melton Motors, Inc.*, 2005 WL 1028225, at *4 (E.D. Mich. 2005),

In the Complaint, Plaintiff alleges that "Bonny and the Estate had and have valid business relationships and/or expectancies based on their receipt of royalties and other income derived from Bonny's artistic works, specifically, their receipt of royalties from BMI…," and that MRC, "intentionally interfered with Bonny and the Estate's valid business relationships and/or expectancies by wrongfully exerting dominion and control over the Compositions and other rights, and by converting the Compositions to their own use." The Court finds that Plaintiff's tortious interference claim, to the extent one has been properly stated, accrued on November 29, 2012, when Bonny sold and assigned to

MRCI his rights to the compositions.  Since that date, MRCI has exercised its rights as the purported owner of Bonny's compositions, including, for example, by receiving royalty payments from BMI.  Plaintiff has not identified any other acts that would constitute tortious interference since that time.  Accordingly Plaintiff's tortious interference claim is time-barred.

### C. Tolling

Plaintiff did not expressly raise tolling of the statute of limitations in his complaint or in his initial briefing in response to Defendant's motion to dismiss.  Instead, and as discussed above, Plaintiff relied on the separate accrual rule applicable to copyright infringement cases to argue he was entitled to pursue damages incurred within the three years preceding the filing of his complaint.  In doing so, Plaintiff conceded that he was not entitled to recover royalty payments associated with Bonny's compositions and received by Defendant prior to November 12, 2015.

However, after reviewing the record and listening to the argument of counsel at the hearing, the Court questioned whether the facts of this case warranted tolling of the statute of limitations for equitable reasons.  If the Court accepted as true Plaintiff's general allegations describing Bonny's diminished mental capacity such that he lacked the mental capacity to enter into the contract, should Bonny be charged with knowledge of a breach of the rights associated with that contract to trigger accrual of his claims?  Neither party could answer this and other related questions at the hearing.  As a result, the Court ordered the parties to submit supplemental briefing addressing whether federal or state tolling principles should apply to toll the statute of limitations here.  After considering the

supplemental briefing of the parties and the record in this case, the Court finds that Plaintiff has failed to demonstrate the statute of limitations should be tolled.

### 1. State law claims

State law principles of tolling apply to Plaintiff's state law claims. *See Siner v. City of Detroit*, No. 15-CV-13532, 2017 WL 3434085, at *2 (E.D. Mich. Aug. 10, 2017); *Citizens Bank v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, No. 11-CV-14502, 2012 WL 5828623, at *3 (E.D. Mich. July 6, 2012). In his supplemental brief, Plaintiff does not present any authority for tolling his state law claims under Michigan law. Instead, Plaintiff relies on the federal discovery rule and federal principles of equitable tolling to argue that his various state law claims should not be barred by the statute of limitations.

In light of the factual allegations in the complaint concerning Bonny's mental condition, the Court specifically asked the parties to consider whether MCL § 600.5851, which provides that the statute of limitations may be tolled as a result of legal disabilities including "insanity", applies here.[6] Under this statute, when a person is "insane" at the time his claim accrues, the person (or others claiming through him) has one year after the disability is removed through death or otherwise to file suit even though the period of limitations has run. MCL § 600.5851; *Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 884 (E.D. Mich. 2013). A person is considered insane under the statute when a condition of mental derangement prevents him from comprehending rights he is otherwise bound to know and is not dependent on whether or not he has been judicially declared to be insane. MCL § 600.5851.

---

[6] Both parties argue for different reasons that MCL § 600.5851 does not apply here.

While the Court is not aware of any authority holding a person's diagnosis with Alzheimer's disease renders the person insane under MCL § 600.5851, the Court recognizes that it is certainly possible for a person with Alzheimer's disease to qualify as insane under the statute's definition. But even assuming Bonny's Alzheimer's disease rendered him insane as defined by the statute and MCL § 600.5851 applies, Plaintiff's state law claims would be untimely. Plaintiff would have had one year from the date of Bonny's death (or until June 27, 2017) to bring the state law claims in this case, but Plaintiff did not file suit until November 12, 2018. Therefore Plaintiff's claims are not saved by MCL § 600.5851.

Plaintiff presents no other possible basis under Michigan law for tolling the statute of limitations applicable to his state law claims. Accordingly, for the reasons discussed above, the Court finds that each of Plaintiff's state law claims should be dismissed.

### 2. Federal copyright claim

Federal principles of tolling apply to Plaintiff's copyright claim. *See Rotella v. Wood*, 528 U.S. 549, 560 (2000); *Ruhl v. Ohio Health Dep't*, 725 F. App'x 324, 334 (6th Cir. 2018) ("Where a claim based on [sic] is based on federal law, and that federal law has its own statute of limitations, it is straightforward that those limitations control."). In his supplemental briefing, Plaintiff argues that equitable tolling and the "federal discovery rule" should be applied to preserve his claims.

Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (internal quotation marks omitted). A litigant is entitled to equitable tolling of a statute of limitations

only if the litigant establishes two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755, 193 L. Ed. 2d 652 (2016) (quoting *Holland v. Fla.*, 560 U.S. 631, 649 (2010)). (internal quotation marks omitted).[7] Courts grant equitable tolling "sparingly", and the plaintiff bears the burden of showing that he is entitled to equitable tolling. *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011); *Plummer v. Warren*, 463 F. App'x 501, 504 (6th Cir. 2012).

Here, Plaintiff fails to satisfy his burden. Specifically, Plaintiff fails to allege facts demonstrating he has been pursuing his rights diligently. Even if the Court found that Bonny's mental condition and the circumstances of the transaction amounted to an extraordinary circumstance preventing a timely filing, there are no factual allegations explaining why it took over two years after Bonny's death for his estate to bring this suit. There are also no factual allegations explaining why it was not possible for Duane Rice, or others, to discover Bonny's alleged injuries prior to Bonny's death.

Plaintiff also fails to demonstrate an extraordinary circumstance that warrants tolling of the statute of limitations. Mental incompetence or incapacity may, but does not automatically, provide a basis for equitable tolling. *Ata*, 662 F.3d at 741. In order to satisfy the extraordinary circumstance prong at this stage of the proceeding based on mental incompetence, Plaintiff must present sufficient factual allegations to demonstrate that Bonny: (1) was mentally incompetent at the time his claim accrued; and (2) his mental

---

[7] In its supplemental briefing, Plaintiff states that the Sixth Circuit uses a five factor test to determine whether equitable tolling should apply to a federal statute of limitations. Plaintiff cites *Brown v.* McKee, 232 F. Supp. 2d 761, 768 (E.D. Mich. 2002) for this five factor test. However, in *Hall v. Warden, Lebanon Corr. Inst.* the Sixth Circuit recognized that this five factor test is no longer good law and explained that equitable tolling in the Sixth Circuit is governed by *Holland*'s two-prong standard. 662 F.3d 745, 750 (6th Cir. 2011).

incompetence caused his failure to comply with the statute of limitations. *Id.* at 742. However, "a blanket assertion of mental incompetence is insufficient to toll the statute of limitations." *Id.* Here, the allegations in the complaint do not satisfy this standard. That Bonny is alleged to have been diagnosed with Alzheimer's and lacked capacity to enter into the contract at the time of its execution does not establish that he was mentally incompetent or that neither he, nor his legal representatives, were not aware of the transaction. For these reasons, and considering the factual allegations in the complaint in a light that is most favorable to Plaintiff, the Court declines to find an extraordinary circumstance warranting equitable tolling of the statute of limitations.

Finally, Plaintiff's reliance on the discovery rule in his supplemental briefing is misguided for several reasons. First, Plaintiff conceded in his initial briefing in response to Defendant's motion that Bonny knew or should have known of his copyright claims at the time of the transaction, but Plaintiff does not identify any new factual allegations requiring a different analysis than discussed above. Second, the allegations in the complaint concerning Bonny's mental capacity do not necessarily result in finding Bonny did not know, or should not be charged with having known, that his claims existed. In other words, even if the Court accepts as true the allegation that Bonny lacked capacity to enter into the contract, the allegations are not sufficient to establish that neither Bonny nor any of his legal representatives or family members were aware of the transaction with MRCI. And there are no specific factual allegations of any fraudulent conduct by either Defendant preventing discovery of the transactions. Accordingly, Plaintiff has failed to establish that the discovery rule applies to save his claims.

## IV. Plaintiff's state law claims against Defendant Laura Rice

This Court possessed federal question jurisdiction over Plaintiff's copyright claims, and exercised its supplemental jurisdiction over Plaintiff's accompanying state law claims. Because Plaintiff's copyright claim will be dismissed upon entry of this Order and Opinion, the only remaining claims in this dispute are Plaintiff's state law claims against Defendant Laura Rice. Pursuant to 28 U.S.C. § 1367(c)(3), and having considered the factors set forth by the Supreme Court in *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Defendant Laura Rice. Plaintiff's claims against Defendant Laura Rice are hereby dismissed without prejudice.

## V. Plaintiff's request for leave to amend his complaint

Plaintiff requests leave to amend his complaint if the Court grants Defendant's motion to dismiss in whole or in part. Amendment of pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a)(2) provides that after a responsive pleading is filed, a party may amend its pleading only with the written consent of the opposing party or with leave of court. The rule further provides that the court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). However, a court may deny a proposed amendment as futile if the claims it asserts cannot survive a motion to dismiss. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248-50 (6th Cir. 1986) (holding proposed amendment would be futile where proposed amended complaint fails to state a cognizable claim against defendants); *Home Quarters Real Estate Grp., LLC v. Michigan Data Exch., Inc.,* No. 2:07-CV-12090, 2010 WL 11545057, at *2 (E.D. Mich.

June 28, 2010) (finding that amended complaint would be futile because proposed claims were barred by statute of limitations).

Plaintiff states he wants the opportunity to amend so that he can make "curative amendments" to his complaint. Plaintiff, however, has not provided the Court with the proposed amended complaint. Plaintiff also does not describe the scope of the proposed amendments or identify what changes he would actually make to his complaint. Moreover, Plaintiff does not explain how such amendments would change the fact that his claims are time barred. Because there is no basis for the Court to find Plaintiff's hypothetical amended complaint could survive a motion to dismiss, the Court finds that granting leave to amend would be futile, and Plaintiff's request is denied.

## VI. Conclusion

For the foregoing reasons, Defendant MRCI's motion to dismiss is **GRANTED**. In addition, Plaintiff's state law claims against Defendant Laura Rice are **DISMISSED** without prejudice for lack of subject matter jurisdiction. Plaintiff's request for leave to amend his complaint is **DENIED**.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: June 19, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 19, 2019, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager